IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**TASHA BROWN,**

    **Plaintiff,**

**v.**                                       **CIVIL ACTION NO. 6:13-cv-10572**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Defendant's Brief in Support of Defendant's Decision (ECF No. 13) and Plaintiff's Reply (ECF No. 14).

The Plaintiff, Tasha Brown (hereinafter referred to as Claimant), filed an application for SSI on May 4, 2010, alleging disability as of August 9, 2009, due to experiencing seizures and

anxiety. The claim was denied initially on September 2, 2010, and upon reconsideration on December 20, 2010. Following a hearing before the Administrative Law Judge (hereinafter ALJ), her application for benefits was denied (Tr. at 29). On May 31, 2012, Claimant filed a request for the Appeals Council to review the ALJ's decision (Tr. at 14). On March 14, 2013, the Appeals Council denied Claimant's request (Tr. at 1-4). After exhausting her administrative remedies, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from

a severe impairment. *Id.* § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the application date (Tr. at 21).

Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of a seizure disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 24). The ALJ then found that Claimant has a residual functional capacity for work at any exertional level, reduced by nonexertional limitations.[1] (*Id.*) Claimant has no past relevant work (Tr. at 28). The ALJ concluded that Claimant could perform jobs such as material handler, stocker, laundry worker, dishwasher, cleaner, price marker, hand packer and assembler (Tr. at 29). On this basis, benefits were denied. (*Id.*)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

---

[1] Claimant can never climb ladders, ropes or scaffolds; should avoid concentrated exposure to extreme cold, extreme heat, noise, vibration, fumes, odors, gases and poor ventilation and even moderate exposure to hazards such as moving machinery and unprotected heights; requires simple, routine, repetitive tasks with occasional decision-making (Tr. at 25-15).

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on December 13, 1986. Claimant reported that she completed tenth (10th) grade in 2005. She did not attend special education classes (Tr. at 200). Claimant has no relevant past work history.

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to perform a credibility analysis on Claimant's lay witness, her boyfriend, where professional observation of her seizures were not available

(ECF No. 10). Claimant argues that the ALJ's determination that her impairments of border intellectual functioning, bipolar disorder and anxiety were non-severe is not supported by substantial evidence. Claimant asserts that the medical evidence of record establishes that the impairments have more than a "minimal effect" on Claimant's ability to work. Claimant asserts that the ALJ erred in determining that she does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (*See* 416.920(d) and 416.926). Claimant asserts the ALJ erred in finding that Claimant has the residual functional capacity (hereinafter RFC) to perform light work.

Defendant argues that the testimony of Claimant's boyfriend regarding her seizures was not credible (Tr. at 13). Defendant asserts that substantial evidence supports the ALJ's assessment of Claimant's RFC and the ALJ's decision.

The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence

informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Discussion

### Listing 11.00 Neurological

20 CFR Part 404, Subpart P, Appendix 1, §§§ 11.00, 11.02 and 11.03 state, in relevant part:

> A. *Epilepsy*. In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.
>
> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, [evaluation] of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the

other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must also be assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Category of Impairments, Neurological

11.02   *Epilepsy – convulsive epilepsy, (Grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.*  With:

A.   Daytime episodes (loss of consciousness and convulsive seizures) or

B.   Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

11.03   *Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.*  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

<u>Credibility</u>

In his decision, the ALJ summarized the medical evidence of

record and Claimant's varying statements to medical sources about the frequency of her seizures (Tr. at 19-29). The evidence of record reveals that over the years, Claimant has been treated for a seizure disorder, which also has been described as both actual as well as pseudo-seizures (Tr. at 310, 316, 373, 424, 425, 426) 316). In evaluating Claimant's subjective complaints and as required by 20 C.F.R. § 416.929(c)(3) (2013), the ALJ acknowledged the testimony of record from Claimant and her boyfriend, Ernest Barker, as to the frequency of Claimant's seizures. Despite acknowledging this testimony in the decision, the ALJ made no specific findings as to Claimant's boyfriend's credibility. Mr. Barker's testimony provided first-hand accounts of Claimant's seizures. He testified that Claimant experiences four (4) to five (5) seizures a week. He testified to noticing an increase in the frequency of her seizures. Mr. Barker testified that Claimant experiences two (2) to three (3) seizures a week while she is asleep.

The ALJ found Claimant's "statements concerning the intensity, persistence and limiting effect" of [her] symptoms are not entirely credible" (Tr. at 26). The ALJ did not explain what weight or consideration was given to Mr. Barker's testimony, nor did the ALJ provide a credibility analysis.

The ALJ made the following findings regarding weight granted to medical opinions concerning Claimant's seizure disorder:

9

On August 9, 2009, the claimant presented to Camden Clark Memorial Hospital with complaints of assault by her boyfriend.[2] A CT scan of the brain was normal (Exhibit 1F, page 19).

On August 21, 2009, the claimant presented to Riverview Primary Care with complaints of being struck with a baseball bat on Sunday by her former boyfriend. She indicated that she was hit in the left wrist (Exhibit 4F, page 7). On January 13, 2010, the claimant reported she stopped taking Effexor. She was diagnosed with seizure disorder and major depression. The record indicates she had a seizure disorder and major depression. The record indicates she had a seizure due to withdrawal from Effexor (Exhibit 4F, page 5). An EEG dated January 27, 2010, was normal. If clinical suspicion for seizure is strong, consider a sleep-deprived EEG (Exhibit 4F, page 4). An EEG dated March 11, 2010, was normal. On April 26, 2010, the claimant was diagnosed with seizure disorder. Ms. Brown indicated Klonopin was not working. The claimant's phenytoin level was 7.8 (reference range 10.0 to 20.0) (Exhibit 4F, page 13). On July 26, 2010, the record indicates the claimant's medication was changed to Keppra, with improved control of seizures (Exhibit 4F, page 1).

The claimant was referred to Ruby Parveen, M.D., from Parkersburg Neurological Associates, for further evaluation of seizures. Ms. Brown reported that on August 9, 2009, her former boyfriend hit her in the head with a baseball bat. She went to the emergency room where it was determined she had no intracranial bleed or skull fracture. The claimant indicated that the next day she started having seizures. She presented with complaints of syncopal episodes accompanied by lightheadedness, weird sensation, tightening of her body, and seizures lasting two to three minutes to seven or eight minutes. She indicated having tonic clonic activity of the arms and legs. Ms. Brown noted she had muscle soreness and mild disorientation for 20 minutes following a seizure. A CT scan of the head was negative. A previous EEG was negative. The claimant had been consuming alcohol when she presented to the emergency room with seizure. The

---

2 Claimant's references to assault inflicted by a boyfriend appears to be from a previous boyfriend, not Mr. Barker.

claimant's gait was normal and motor strength was good in bilateral upper and lower extremities. She was advised to stop using alcohol. Keppra use was initiated. She was not allowed to resume driving at this time. An MRI of the brain dated June 24, 2010, revealed no acute intracranial finding (Exhibit 9F, page 3). The claimant indicated she had back-to-back seizures lasting five to eight minutes with tonic clonic activity while at a friend's house. Dr. Parveen reported an 80% reduction in seizure activity since instituting Keppra. On October 4, 2010, Dr. Parveen reported the claimant has both actual as well as a very large component of pseudoseizures. Ms. Brown indicated that, since July, she has had no seizures; she is doing well since being prescribed Keppra (Exhibit 9F, page 2). The record shows the claimant has found significant relief. Dr. Parveen notes the examination remains stable. MRI was normal and video EEG was normal (Exhibit 9F).

A medical report dated February 23, 2011, from L. Scott Sole, M.D., shows the claimant was doing quite well since she has been prescribed Keppra with no symptom complex, partial, or generalized seizure reported. The claimant's roommate reported she has not seen any seizures like those that she had witnessed previously. The claimant reported no side effects, headaches, nausea, vomiting, or fatigue at this time (Exhibit 14 F, page 3). On July 18, 2011, Dr. Sole indicates the claimant returned for follow-up of seizures. The record indicates the claimant was doing reasonably well up until April; she had seizures on April 16, 2011; another one on June 17, 2011; and another one on July 7, 2011. The record indicates increased seizure activity with alcohol intake. On October 26, 2011, Dr. Sole reported increased dosage of Keppra. The claimant reported one seizure during sleep with tonic clonic activity. An MRI within the past year was unremarkable. The claimant was advised not to drive. She denied any new complaints. Dr. Sole noted the examination remains essentially unchanged (Exhibit 14F).

An EEG report dated March 8, 2012, from Camden Clark Memorial Hospital was normal (Exhibit 12F, page 1).

On September 12, 2009, the claimant presented to Saint Joseph's Hospital after having two seizures. Ms. Brown

11

reported that when she gets tired and overheated she has a seizure. On January 10, 2010, the claimant presented again with a seizure; she was also intoxicated (Exhibit 2F).

On August 24, 2010, Paul Dunn, Ph.D., a licensed psychologist, evaluated the claimant for the state agency. The claimant reported that she has a ninth-grade education; she did not attend learning disability classes or receive special education services. She has no GED. Ms. Brown presented with complaints of seizure, anxiety, and panic attacks since being beaten by her former boyfriend. The claimant reported she last consumed alcohol when she was two months pregnant with her child. She smokes one-half to one and one-half packs of cigarettes a day; she denied drug abuse. Dr. Dunn reported the claimant's mood was broad and normal; affect was mildly labile; eye contact was average; and prognosis is fair with psychological treatment. Dr. Dunn noted the claimant's concentration and persistence were mildly impaired, pace, immediate memory, and recent memory were within normal limit, and remote memory and judgment were moderately deficient. On the Wechsler Adult Intelligence Scale-IV, the claimant attained Full Scale IQ of 74, indicating borderline intellectual functioning.

(Tr. at 21-23).

Claimant asserts that the ALJ erred in failing to make a credibility finding about her lay witness if a professional observation regarding her seizures was not available. Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 10) asserts:

> The listing requirements for seizures indicates that, "[t]estimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." 20 CFR Part 404, Subpart P, Appendix 1, § 11.00. At the hearing, both Plaintiff and Barker testified as to the nature and duration of Plaintiff's seizures.
>
> SSR 06-03p requires that an ALJ consider all relevant

12

> evidence in an individual's case record, and indicates that an ALJ should explain the weight given to opinions from "other sources" in his decision. The ALJ failed to make a finding about Barker's credibility, and failed to note Barker's corroborating testimony in making a credibility finding about Plaintiff. He also failed to mention the seizure log that Plaintiff and Barker kept. Accordingly, the ALJ erred in not making a credibility finding regarding Barker, or in considering Barker's testimony in making a credibility finding with respect to Plaintiff.

The frequency and nature of Claimant's seizures is a central issue in Claimant's case. The medical opinions in the record reflect self-reported accounts of Claimant's seizures. Claimant's boyfriend provided first-hand observation of the nature of Claimant's seizures and their frequency. Unlike Claimant's treating physicians, Mr. Barker saw Claimant every day (Tr. at 48). Mr. Barker kept a log of Claimant's seizures (Tr. at 25, 269-275). The Fourth Circuit held in *Craig v. Chater*, "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson v. Barnhart,* 434 F.3d 650 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 176 (4th Cir. 2001)) (internal quotation marks omitted).

The ALJ determined that Claimant's testimony regarding the frequency of her seizures was inconsistent in comparison to the medical records from Ruby Parveen, M.D., with Parkersburg Neurological Associates, in 2010 (Tr. at 26). However, the ALJ did

13

not address the consistency of Mr. Barker's testimony regarding the frequency of Claimant's seizures with the medical opinion on record. Claimant testified to having seizures "Three to four times a day" (Tr. at 40). Claimant testified that she does not experience seizures every day. Claimant asserts that she experiences seizures three (3) or four (4) times a week (Tr. at 46). Similarly, Mr. Barker testified to Claimant experiencing four (4) to five (5) seizures, or more, in a week (Tr. at 49). Under 20 CFR § 416.913(d)(4), the ALJ considers evidence provided by "other non-medical sources," including spouses and friends of the Claimant. 20 CFR § 416.913(d)(4); *Morgan v. Barnhart*, 142 Fed. Appx. 716, 720 (4th Cir. 2005). Social Security Ruling 06-03p provides guidance on how to treat "other non-medical sources." SSR 06-03p provides guidance on how to treat "other non-medical sources." SSR 06-03p, at *5. "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, at *6. The Ruling emphasizes that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.* at *6. Generally, the ALJ must

"explain the weight given to these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *6.

This Court has previously held that "When considering whether an ALJ's credibility determination is supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessment for that of the ALJ; rather, the Court must review the record as a whole and determine if it is sufficient to support the ALJ's conclusion. *Beck v. Michael Astrue*, Case No. 3:11-cv-00711 (S.D. W.Va. September 7, 2012). "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence… or substitute its own judgment for that of the Commissioner." *Hays*, 907 F.2d. at 1456. The Fourth Circuit has held that because the ALJ has the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (citing Tyler v. Weinberger, 409 F.Supp. 776 (E.D. Va. 1976)).

Claimant further asserts in her Reply to Defendant's Brief (ECF No. 14):

> As noted by the Court in *Brown v. Astrue*, 2012 U.S. Dist. LEXIS 197240 (N.D.Ill., Dec. 19, 2012), SSR 06-3p requires an ALJ to "consider all of the available evidence in the

individual's case record," and failure to consider the testimony of a non-medical source completely cannot be considered to be "merely harmless error" when that testimony may be critical to a proper analysis of the plaintiff's case. *Id.* Since the listing for seizures specifically notes that the "[t]estimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available" (20 CFR Part 404, Subpart P, Appendix 1, § 11.00), it is clear that Barker's testimony was, indeed, critical in this case. Even if there are inconsistencies between Barker's testimony and other medical sources, it is for the ALJ, not this Court, to resolve such conflicts. *See, e.g. Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004).

The introduction to Social Security Ruling 06-03p: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, states that when the Social Security Commissioner makes a determination or decision of disability, the Commissioner will consider all of the available evidence in the individual's case record. This includes statements by the claimant and others about the impairment(s) and how it affects the claimant's functioning and information from other "non-medical sources."

Defendant asserts that "the objective medical evidence undermines [Mr. Barker's] testimony regarding the type and frequency of [Claimant's] seizures" (ECF No. 13). Defendant asserts that Mr. Barker's testimony does not support Claimant's claim that her seizures were disabling because his testimony was inconsistent with the other objective evidence of record. The ALJ, not Defendant, is

16

responsible for making credibility determinations. In the present case, the ALJ did not explain the consistency or inconsistency of Mr. Barker's testimony with the evidence of record.

In the present case, the ALJ failed to perform a credibility assessment of Claimant's lay witness, Mr. Barker. The ALJ failed to determine whether Mr. Barker's testimony bolstered medical and/or non-medical evidence offered by Claimant, or whether his testimony conflicted with other evidence upon which the ALJ relied.

The ALJ's failure to explain Mr. Barker's credibility or explain the weight allocated to his testimony constitutes a basis for remand. Based on the above, the undersigned proposes that the District Court find that the ALJ failed to perform a credibility analysis of Mr. Barker, determine whether his testimony supports Claimant's claim and determine whether it was inconsistent with the evidence of record. The ALJ's failure to explain weight given to Mr. Barker's testimony or explain how he considered Mr. Barker's testimony in conjunction with the evidence of record results in the undersigned finding that substantial evidence does not support the ALJ's decision.

Because the undersigned has recommended remand on the basis that the ALJ failed to conduct a credibility analysis of Claimant's lay witness, Claimant's other challenges to the Commissioner's decision do not need to be addressed at this time. For the reasons set forth

above, it is hereby respectfully RECOMMENDED that the District Court GRANT the Plaintiff's Motion for Judgment on the Pleadings to the extent she seeks remand and otherwise DENY Plaintiff's Motion, DENY the Defendant's Motion for Judgment on the Pleadings, REVERSE the final decision of the Commissioner, and REMAND this case to the ALJ for a credibility analysis of Mr. Barker's testimony and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474

U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Enter: July 31, 2014

Dwane L. Tinsley
United States Magistrate Judge